Annette Marie **BLEVINS** and Frances Elizabeth Amerspek, Plaintiffs,

v.

**HEILIG–MEYERS CORPORATION**
and Monte Holcomb,
Defendants.

No. Civ.A. 98–T–241–S.

United States District Court,
M.D. Alabama,
Southern Division.

Dec. 30, 1998.

Jerry R. Herring, Dothan, AL, Arthur R. Medley, Dothan, AL, for Plaintiffs.

Wade Hampton Baxley, Ramsey, Baxley, McDougle & Collier, Dothan, AL, Stephen E. Brown, Maynard, Cooper & Gale, P.C., Birmingham, AL, Carol Rick Gibbons, McGuire, Woods, Battle & Boothe, Richmond, VA, Jonathan P. Harmon, McGuire, Woods, Battle & Boothe, Richmond, VA, Jeffrey A. Lee, Maynard, Cooper & Gale, P.C., Birmingham, AL, Gary S. Marshall, McGuire, Woods, Battle & Boothe, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiffs Annette Marie Blevins and Frances Elizabeth Amerspek filed this lawsuit alleging that they were subjected to hostile-work-environment sexual harassment. Blevins additionally alleges that she was denied a promotion on the basis of sex, that she suffered retaliation for complaining about harassment, and that she was constructively discharged. Blevins and Amerspek name as defendants their former employer, Heilig–Meyers Corporation, and Monte Holcomb, the former manager of the Heilig–Meyers store in Enterprise, Alabama. Based on these allegations, Blevins asserts four federal claims—hostile-work-environment sexual harassment, denial of promotion, retaliation, and constructive discharge—pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, and raises state-law claims of outrage and negligent super-

vision. Amerspek does not assert any federal claims and raises only the state-law claims of outrage and negligent-supervision claims.[1] The court has jurisdiction over the Title–VII claim pursuant to 42 U.S.C.A. § 2000e–5(f)(3). Supplemental jurisdiction over the state-law claims is proper under 28 U.S.C.A. § 1367. This matter is now before the court on the defendants' motion for summary judgment. For the reasons below, the court will grant the motion as to Blevins's federal claims and will dismiss Blevins's and Amerspek's state-law claims without prejudice.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the non-movant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or non-movant bears the burden of proof at trial). In making its determination, the court must view all evidence and

any factual inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

The facts, as garnered from the affidavits, deposition testimony, and other evidence submitted by the parties but viewed in the light most favorable to the plaintiffs, are as follows. Plaintiffs Blevins and Amerspek, both white females, are former employees of defendant Heilig–Meyers Corporation. Blevins worked at the Enterprise, Alabama Heilig–Meyers furniture store from April 1995 until the end of July 1996 as a collector/financial officer. Amerspek worked there from June 1994 to February 1995 and again from July 1995 until August 1996 as a cashier/collector. Beginning in approximately December 1995, defendant Monte Holcomb was the Enterprise store manager.

Blevins and Amerspek had two concerns about their employment: first, they felt they should be promoted, and second, they were offended by Holcomb's use of foul language. Blevins and Amerspek were both interested in being promoted to the position of assistant credit manager. Heilig–Meyers had eliminated the position before February 1995, and there had not been anyone in that position subsequently.[2] In early 1996, Holcomb had asked Pat Patterson, the district supervisor,[3] for permission to promote Blevins to the position.[4] Patterson informed him that there was not enough money in his budget for the position. In April 1996, Blevins and

---

1. In the complaint, filed March 5, 1998, Amerspek raises a constructive-discharge claim under Title VII. However, counsel for Amerspek orally represented to the court that, because Amerspek has not complied with the administrative prerequisites for bringing a Title VII claim, she is not pursuing a constructive-discharge claim.

2. Plaintiffs' Brief Supporting Motion to Deny Summary Judgment (hereafter "Plaintiffs' brief"), filed October 30, 1998, attachment 3, deposition of Frances Amerspek (hereafter "Amerspek deposition") at 39.

3. The structure of Heilig–Meyers's management relevant to this case is, from highest to lowest, as follows: regional supervisor, district supervisor, store manager, credit manager, and assistant credit manager.

4. Holcomb, as store manager, made the promotion decisions for the employees in his store, but had to obtain approval from Patterson.

Amerspek complained to Patterson that they felt they should be promoted to assistant credit manager. In June 1996, Blevins contends that Rick Jenkins, the credit manager and her immediate supervisor, told her that Patterson had approved her promotion to assistant credit manager.[5]

Blevins and Amerspek also complained about Holcomb's use of foul language. Blevins contends that Holcomb often used "foul" language and made "derogatory" comments about other employees.[6] Specifically, Blevins found the following comments offensive:

• First, in the spring of 1996, Holcomb called Jeffery Flowers "a stupid nigger" in Blevins's presence.[7]

• Second, a couple of months later, Holcomb said in front of Blevins and Amerspek that employee Wanda Beck "needed to get her fat ass around here" to do some work.[8]

• Third, Holcomb cursed about filing.[9] He said the following "quite a bit:"[10] "Why can't somebody get the fucking filing done?"[11] Blevins was present for these remarks.

• Finally, during the first week of July 1996, Holcomb said to Amerspek and Beck that "if somebody ... didn't get this f'ing filing done, they were going to find their asses in the unemployment line."[12] Blevins contends that the comment was so upsetting to her that she cried when she learned of it.[13]

About a week after Holcomb made the final comment, Blevins complained about Holcomb's language to her immediate supervisor, Rick Jenkins.[14] Blevins states that Jenkins later told her that he had called the Richmond, Virginia home office to report her complaint and was told that the use of profanity is not a violation of company policy unless directed to a specific employee or used in a "derogatory manner."[15]

That night, Blevins told her husband, Tony Blevins,[16] about Holcomb's behavior and the home office's response.[17] The next day, Mr. Blevins called Heilig–Meyers's complaint number.[18] First, he spoke with Fred Woods, the regional supervisor, and asked him to look into Holcomb's behavior.[19] Woods referred him to Patterson, to whom Blevins also complained about Holcomb's use of foul language. Mr. Blevins did not tell his wife that he had made the calls.[20]

---

**5.** Plaintiffs' Brief, attachment, full transcript of deposition of Annette Blevins (hereafter "Blevins deposition") at 143, 182.

**6.** Plaintiffs' brief, attachment 2, answers to interrogatories by Annette Blevins (hereafter "Blevins answers"), no. 7.

**7.** Blevins deposition at 155.

**8.** *Id.* at 157.

**9.** *Id.* at 157, 160.

**10.** *Id.*

**11.** *Id.* at 158.

**12.** Blevins deposition at 159, 182.

**13.** Blevins deposition at 159. The evidence in the record is contradictory as to whether Blevins was present when Holcomb made this statement. Although in her interrogatory answers, Blevins contends that she was present for the comment, Blevins answers, no. 10.,

Blevins and Amerspek testified in their respective depositions that Blevins was not present when the comment was made. Blevins deposition at 159; Amerspek deposition at 114 (stating that Holcomb made the comment to Amerspek and Beck only).

**14.** *Id.* at 162.

**15.** *Id.* at 165. Blevins answers, no. 10.

**16.** The court will use "Mr. Blevins" to refer to Tony Blevins and "Blevins" to refer to Annette Blevins.

**17.** Blevins deposition at 170–73; Plaintiffs' brief, attachment 4, deposition of Tony Blevins (hereafter "Tony Blevins deposition") at 22.

**18.** *Id.* at 23.

**19.** *Id.* at 32.

**20.** *Id.* at 37.

At work the following day, Holcomb told Blevins that she was a "trouble-maker" and that her husband "should have handled it like a man and come to him directly." [21] Blevins came home for lunch crying because she felt that everyone at work knew about Mr. Blevins's complaint. [22]

After Blevins's husband complained, Patterson and Woods came to the store and spoke with Holcomb. [23] That day, Blevins asked Jenkins whether she would still receive the promotion he had informed her of earlier. [24] Jenkins told her she would not be getting the promotion. When Blevins asked whether it was because of "what had happened," Jenkins shrugged his shoulders. Blevins then asked Jenkins whether she would "have to get an attorney to get a promotion." [25]

After Patterson and Woods left the store, Holcomb called Blevins into his office. Blevins contends that he told her that "everything was settled," that he was still going to be the manager, and that "it was going to be his way or the highway," and asked her whether she "had a better attitude" and knew that he was in charge. Holcomb appeared to be "upset" during the conversation. [26]

After Mr. Blevins's complaint, Holcomb stopped using foul language. [27] However, the following day, Holcomb again called Blevins into his office and asked her if she had a better attitude. She began to cry, and he sent her home for the rest of the day. [28] Later that day, she went out and applied for a job at the Region's Bank.

Blevins reports that Holcomb called her into his office to ask her if she had a better attitude a total of three or four times. [29] She reports that Holcomb also began calling her into his office almost every day to complain about her job performance, although he had never criticized her work before. Blevins felt that in these conversations Holcomb was "attempting to provoke" her. [30] Blevins also asserts in an answer to an interrogatory, but not in her deposition testimony, that Holcomb told her she would not get the job as assistant credit manager and that thereafter she was "constantly upset." [31] Two or three times a week Blevins came home from work crying. [32]

After her husband's complaint, Blevins felt that the office atmosphere changed. [33] Blevins states that Holcomb "made sure that nobody in the store was overly talkative to [her]," although she does not know how he did it. [34] When she walked into conversations, they would cease. [35] She finally decided to quit because she felt "like an outcast." [36]

At some point, Mr. Blevins called Patterson a second time to report the alleged harassment his wife was suffering since his first complaint. [37] Patterson told him to pursue his complaint through different channels or the Equal Employment Opportunity Commission (EEOC). [38] On July 21, 1996, Blevins gave notice that she was quitting. Her last day of work was July

21. Blevins answers, no. 10.

22. Tony Blevins deposition at 37.

23. Blevins deposition at 128–29.

24. *Id.* at 129.

25. *Id.* at 128.

26. *Id.* at 124–26.

27. *Id.* at 172–73.

28. *Id.* at 129–32.

29. *Id.*

30. Blevins answers, no. 10.

31. *Id.*

32. Tony Blevins deposition at 88.

33. Blevins deposition at 192–93.

34. *Id.* at 190.

35. *Id.* at 192.

36. *Id.* at 191–92.

37. Tony Blevins deposition at 50.

38. *Id.*

31, 1996, and she began work on August 1, 1996, at Region's Bank.[39]

After Blevins left the company, employee Gloria Dumond was promoted to credit manager and employee Scott Wilkes was promoted to assistant credit manager.[40] Wilkes had worked in collections for Heilig–Meyers since 1994 and had completed a college degree.[41] Patterson testified that Wilkes was promoted because his overall qualifications, including his educational background, made him the most qualified candidate for the job.[42] Holcomb testified that what set Wilkes apart from Blevins was that he could work nights and weekends and that he had a college degree. Blevins believes that Holcomb promoted Wilkes in part because Wilkes was "buddy-buddy" with Holcomb.[43] According to Dumond, Holcomb gave preferential treatment to his "buddies," including Tammy Downs, a female employee she believed Holcomb was dating.[44]

It is unclear exactly when the decision to promote Wilkes was made. On August 12, 1996, Amerspek gave Patterson a letter of complaint about not being promoted to assistant credit manager; the letter indicated that Amerspek had learned by that time that Wilkes would be promoted to the position.[45] Wilkes's promotion became effective on September 8, 1996.

Blevins filed a complaint with the EEOC on October 16, 1998.[46] The EEOC issued a right-to-sue notice on December 19, 1997.[47] On March 5, 1998, Blevins and Amerspek filed this lawsuit.

## III. HOSTILE–WORK–ENVIRONMENT HARASSMENT

Blevins claims that she was subjected to hostile-work-environment harassment in violation of Title VII. The defendants contend that Blevins cannot establish a prima-facie case of hostile environment harassment. The court agrees.

▇ Under Title VII of the Civil Rights Act of 1964, "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A § 2000e–2(a)(1). To prove a prima-facie case of hostile-work-environment harassment under Title VII, the plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to unwelcome conduct; (3) the conduct was on the basis of sex; (4) the conduct affected a term or condition of employment; and (5) respondeat superior. *See Henson v. Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982). It is undisputed that Blevins is a member of a protected group and that the conduct she experienced was unwelcome. The court finds that Blevins has not established a prima-facie case, however, because she failed to show that the complained-of harassment was based on sex.

▇ Blevins complains of two groups of behaviors: (1) Holcomb's use of foul language before her husband's complaint,

---

**39.** Blevins answers, no. 3.

**40.** Amerspek deposition at 132; Blevins deposition at 178.

**41.** Defendant Heilig–Meyers Corporation's Memorandum in Support of its Motion for Summary Judgment, filed October 5, 1998, attachment E, deposition of Patrick C. Patterson (hereafter "Patterson deposition") at 113.

**42.** *Id.* at 114–15.

**43.** Blevins deposition at 179.

**44.** Plaintiff's Brief Supporting Motion to Deny Summary Judgment, filed October 30, 1998, attachment 8, affidavit of Gloria Jowers (formerly Dumond) at ¶ 5.

**45.** Plaintiffs' brief, attachment 6, letter from Frances Amerspek to Pat Patterson.

**46.** Attachment to Blevins answers.

**47.** Attachment to Blevins answers.

and (2) Holcomb's treatment of Blevins after her husband's complaint. Blevins must prove that this conduct was sex-based to survive summary judgment. Blevins correctly points out that conduct need not be sexual or prurient in nature to be 'based on sex.' To prove the sex-based element of the prima-facie case, a plaintiff merely need show that "but for the fact of her sex, she would not have been the object of harassment." *Henson,* 682 F.2d at 903–04.

To prove that Holcomb's pre-complaint behavior was based on sex, Blevins attempts to show that Holcomb harbored negative attitudes towards women and that he focused his abuse on women. She relies on the following statements from her deposition testimony as evidence that Holcomb harbored negative attitudes towards women: that she believed that Holcomb "thought that every woman had her place,"[48] and that "Wanda Beck did not fit [Holcomb's] idea of the ideal woman, so she was a fat ass."[49] These are merely Blevins's conclusions about Holcomb's attitudes towards women. However, "[m]ere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." *Bald Mountain Park, Ltd. v. Oliver,* 863 F.2d 1560, 1563 (11th Cir.1989).

Moreover, Holcomb's reference to Beck's buttocks does not show that his conduct was sex-based. "Fat ass" is a phrase which in certain circumstances evidences sex-based harassment. For instance, in *Sims v. Montgomery County,* 766 F.Supp. 1052 (M.D.Ala.1990) (Thompson, J.), the term was used in a sex-based manner. In that case, a male supervisor addressed a female employee as "fat ass" instead of using her name, grabbed her buttocks, suggested that they could have "something going on" and that her husband would not know about it, and repeatedly talked in her presence in a sexual manner about the size and texture of her

buttocks. *Id.* at 1071. In the context of the set of behaviors to which the employee in that case was subjected, the supervisor's use of the term "fat ass" evidenced sex-based harassment. Here, in contrast, the context does not infuse Holcomb's use of the phrase "fat ass" with sexist or sexual meaning. The evidence submitted by Blevins shows that Holcomb used the phrase once in anger to refer to an employee, Beck, who was not present. In contrast with *Sims,* there is no indication that he taunted or came on to Beck or any other employee with comments about her buttocks or her weight. Nor is there any evidence that "fat ass" was merely one of many epithets used by Holcomb that would suggest he harbored a generalized animus towards women. Blevins has not submitted any evidence showing that Holcomb used such epithets. Indeed, Blevins admits that she cannot recall Holcomb saying anything she perceived as sexist.[50] Given the lack of evidence that Holcomb used the phrase in an effort to taunt or come on to a female employee or that he used any sexist epithets, the court does not consider his single use of the phrase "fat ass" evidence that he engaged in sex-based conduct.

Nor has Blevins submitted evidence sufficient to establish a genuine issue of material fact regarding whether Holcomb directed his foul language primarily at women. To prove this allegation, Blevins cites deposition testimony in which she explained that she based her discrimination claim against Holcomb in part on "the difference in the way that he treated people."[51] Saying that Holcomb treated men and women differently is tantamount to saying that Holcomb discriminated. Therefore, it is merely a restatement of the allegations in the pleadings. However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or

---

**48.** Blevins deposition at 180.

**49.** *Id.*

**50.** *Id.* at 229.

**51.** *Id.* at 180–81.

denials of his pleadings, but must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bald Mountain Park,* 863 F.2d at 1563 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).

Blevins also offers the following exchange during her deposition to show that Holcomb only swore at women:

"Q: ... Now, you said a moment ago that you felt Mr. Holcombe [sic.]—I think you just said you thought he directed comments at women?

"A: Uh-huh.

"Q: All right. Did you ever hear him make comments to men?

"A: Not in reference to their fat ass.

"Q: Okay. Did you ever hear him curse at men, though?

"A: I heard him curse—Well, not curse at Jeff Flowers, but I heard him call him a stupid—

"Q: Okay. So you heard him make a derogatory racial comment to Jeff Flowers. Did you hear him curse at any other men in the store?

"A: I didn't hear him, no." [52]

Thus, Blevins attempts to create a genuine issue of material fact by showing that she personally never heard Holcomb curse at men. However, Blevins offers no evidence that she was in a position to hear most or even much of what Holcomb said to male employees. Without such foundational evidence, the fact that Blevins never heard Holcomb curse at men is insufficient to survive summary judgment. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512) (To defeat summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be enough evidence on which the jury could reasonably find for the plaintiff").

Furthermore, the corroborating evidence cited by Blevins establishes only

that Holcomb cursed as a matter of course. Nowhere does Dumond or Amerspek state that Holcomb cursed only or even mostly at women. In fact, both say that he cursed all of the time. Thus, Blevins has not submitted evidence sufficient to overcome her summary-judgment burden as to the requirement that Holcomb's pre-complaint conduct was based on sex.

As for Holcomb's post-complaint conduct, Blevins offers no evidence that it was based on sex. The record contains no evidence that Holcomb used any sexist language or epithets expressing animus towards women. The fact that Blevins is a woman and that the conduct was directed towards her does not render it sex-based. Because Blevins has failed to establish a the existence of a genuine issue of material fact regarding whether Holcomb's conduct was sex-based, the court will grant summary judgment for the defendants on Blevins's sex-harassment claim.

## IV. SEX DISCRIMINATION

Blevins claims that she was discriminated against on the basis of sex in being denied the position of assistant credit manager. The defendants contend that Blevins cannot prove a prima-facie case of discrimination and that, even if she can, she cannot prove that their reason for not promoting her was pretextual. The court finds that Blevins has presented evidence sufficient to establish a prima-facie case of discrimination. However, the court will grant summary judgment for the defendants because Blevins has not established a genuine issue of material fact as to the truth of the defendants' reasons for denying Blevins a promotion.

Because Blevins offers only circumstantial evidence of discriminatory intent, her claims must be analyzed under the Supreme Court's burden-shifting framework for the presentation of proof in Title VII discrimination cases, as set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Un-

**52.** *Id.*

der the *McDonnell Douglas* approach, an employee has the initial burden of proving a prima-facie case of unlawful discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. at 1824. Many different articulations of the prima-facie case exist, varying with the context of the employment decisions at issue and the types of proscribed practices involved. The essence of the prima-facie case is that the employee presents circumstantial evidence sufficient to generate a reasonable inference by the fact-finder that the employer used prohibited criteria in making an adverse decision about the employee. If established, the prima-facie case raises a presumption that the employer is liable to the employee. *See id.; Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Once the plaintiff has established a prima-facie case, the defendant must rebut the presumption of discrimination established by the prima-facie case by producing sufficient evidence to raise a genuine issue of fact as to whether the employer took unlawful actions against the employee, a burden that can be met by articulating a legitimate, nondiscriminatory reason for the challenged employment action. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). The rebuttal burden is one of production only, and the employer does not have to persuade the court that it was actually motivated by the proffered reason. *See Burdine*, 450 U.S. at 253–55, 101 S.Ct. at 1093–94. If the employer satisfies this burden, "the presumption of discrimination created by the *McDonnell Douglas* framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094–95 & n. 10). Specifically, the burden again shifts to the plaintiff to show that the proffered reason is a pretext for the true discriminatory reason.

The Supreme Court has explained that the plaintiff may successfully demonstrate that the employer's proffered reasons are pretextual by means of either of two alternative approaches. The plaintiff may establish pretext directly, "by persuading the court that a discriminatory reason more likely motivated the employer," or she may do so indirectly, "by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

■ To prove a prima-facie case of failure to promote, Blevins must show that: (1) she is a member of a group protected by Title VII; (2) she sought and was qualified for positions that the defendant employer was attempting to fill; (3) despite her qualifications, she was rejected; and (4) after her rejection the defendant either continued to attempt to fill the position or in fact filled the position with a person outside of her protected class. *See Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir.1998) (quoting *Crawford v. Western Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980)). It is undisputed that Blevins is a member of a protected class, that she applied for and was qualified for the position of assistant credit manager, and that Scott Wilkes, a man, was given the position. However, the defendants assert that Blevins has not established a prima-facie case for two reasons. First, they argue that Blevins cannot establish that she was rejected for an available position. Second, they contend that, to prove a prima-facie case, Blevins must show that an equally or less qualified person was promoted instead of her and that she has not done so. The court disagrees on both counts.

The defendants contend that the evidence shows that the assistant-credit-manager position was not available until after Blevins quit. The court does not view the evidence in the same way. The evidence shows that Wilkes became assistant credit manager on September 8, 1996. However, the fact that Wilkes did not occupy the position until after Blevins left Heilig–Meyers does not prove that the decisions about who would be promoted were made

after Blevins left. Moreover, Blevins testified that in June Jenkins told her that she had been approved for a promotion to assistant credit manager.[53] Thus, there is a genuine issue of material fact regarding whether Heilig–Meyers was attempting to fill the position.

The defendants also argue that Blevins must prove that the position she sought was filled with someone equally or less qualified. They are in error. The Eleventh Circuit recently held that plaintiffs need not prove relative qualifications as part of a prima-facie case of failure to promote. *See Walker*, 158 F.3d at 1193 (11th Cir.1998) (holding that the district court erred in entering judgment for the defendants when it based its finding of no prima-facie case on the plaintiff's failure to prove relative qualifications). Thus, the court finds that Blevins has established a prima-facie case of failure to promote.

■ The defendants further claim that, even if Blevins has established a prima-facie case, she cannot prevail. As justification for their decision not to promote Blevins, the defendants contend that Wilkes was the most qualified candidate for the job. Because this is a legitimate, nondiscriminatory reason for the promotion, the burden shifts back to Blevins to establish the existence of a genuine issue of material fact regarding the truth of this reason. As discussed above, she can do so by introducing evidence to show either that Wilkes was not the more qualified employee or that the defendants were actually motivated by discriminatory animus. She has failed to do either.

Blevins had not presented any evidence suggesting that Wilkes was not in fact the more qualified employee. The evidence submitted by Heilig–Meyers shows that Wilkes, like Blevins, had worked in the collections department, that he had been with the company longer than Blevins had when he was promoted, and that, unlike Blevins, he had completed a college degree. Blevins does not offer evidence to show that these facts are untrue. Instead, Blevins argues that these factors did not make Wilkes more qualified. First, Blevins notes that, although Wilkes had been with the company longer than she had, he worked part-time during a significant part of that time, whereas she had worked full-time. However, Blevins does not offer evidence to show that the company discounted part-time work or favored full-time employees in making promotion decisions. Without some evidence that her full-time status made her more qualified, the fact that she worked full-time while Wilkes did not is irrelevant. Blevins also argues that a college degree was not necessary for the job because Holcomb, the store manager, did not have a college degree. The fact that Holcomb did not have a college degree, however, does not mean that a college degree was not a desirable qualification in an applicant for a managerial position. Furthermore, there is evidence that Patterson wanted to promote someone who could go into the corporate-management-trainee program, for which a college degree was required.[54]

Blevins also argues that Holcomb proffered a different reason for not promoting

---

53. The defendants argue that Jenkins's statements are not probative because he did not have the authority to promote Blevins. However, a look at the full deposition transcript reveals that Jenkins told Blevins that Pat Patterson, the district supervisor, had approved her promotion. Thus, Jenkins's statement is probative of whether someone in a position to promote her was seeking to fill the position. Furthermore, when considered in combination with the words of Holcomb, who did make promotion decisions, Jenkins's statement at least has corroborative value. Blevins's testimony regarding Jenkins's words may be inadmissible hearsay. However, because the defendants have not raised the issue, the court need not address it. *See White v. Wells Fargo Guard Services*, 908 F.Supp. 1570, 1576 n. 3 (M.D.Ala.1995) (De Ment, J.) (noting that, if no objection is made to inadmissible statements in an affidavit, the court may consider them on summary judgment) (citing *Olympic Ins. Co. v. H.D. Harrison, Inc.*, 418 F.2d 669, 670 (5th Cir.1969)).

54. Plaintiffs' brief, attachment, full transcript. of deposition of Monte Holcomb at 141.

Blevins—that Blevins could not work nights or weekends—and that there is a genuine issue of material fact as to the truth of that reason. The defendants deny that they actually relied on this reason for not promoting Blevins.

The evidence reveals that Holcomb did state in his deposition testimony that Blevins could not be promoted to assistant credit manager in part because she could not work nights and weekends. To demonstrate the existence of a genuine issue of material fact as to the truth of this reason, Blevins points to evidence that she in fact did work nights and weekends and that when she applied for her job at Region's Bank, she wrote on her application that she was available on nights and weekends. This evidence is sufficient to establish a genuine issue of material fact regarding whether she could in fact work nights and weekends. However, in order to survive summary judgment, the plaintiff must show that "there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of *each* of the employer's proffered reasons for its challenged actions." *Combs*, 106 F.3d at 1529 (emphasis added). Because Blevins has not shown that the other reason proffered by Heilig–Meyers to explain their decision was pretextual, she cannot prevail.

Blevins also submits that the date of promoting Wilkes is ambiguous and alone creates a jury question sufficient to survive summary judgment. The court disagrees. Factual ambiguity does not create a jury question unless it goes to a *material* fact. The defendants contend that they hired Wilkes because he was the most qualified person for the job. Thus, the exact date on which Wilkes was promoted is irrelevant. Blevins argues that the evidence suggests that Wilkes was promoted in the summer, "making it much closer to the time Annette Blevins was discharged and raising more doubt about the reasons for denying the job to Annette Blevins."[55]

However, even if the employment decision were made before Blevins was discharged, which it may have been, Blevins has not introduced any doubt about the truth of Heilig–Meyers's proffered justification for promoting Wilkes instead of her.

Nor has Blevins presented any evidence that the defendants were more likely motivated by discriminatory animus than by their proffered reason. There is some evidence that Wilkes was promoted because of Holcomb's favoritism towards his "buddies," a group that included Tammy Downs, a female employee Holcomb was allegedly dating. However, favoritism does not violate Title VII and is not evidence of discrimination in cases, like the instant one, in which benefits inure to members of protected and unprotected classes alike. *See Howard v. BP Oil Co.*, 32 F.3d 520, 527 (11th Cir.1994). As for Holcomb's use of foul language, although the record suggests that Holcomb used foul language in the presence of female employees in the office, that he sometimes directed such language towards female employees, and that he made a derogatory comment about one female employee's buttocks, Blevins has produced no evidence that Holcomb directed his foul language at women only or primarily, used any epithets derogatory to women as a class, or said anything that Blevins perceived as sexist. Finally, the evidence shows that soon after Blevins left the company, Holcomb promoted Dumond, a female employee, to the position of credit manager, a position even higher than the one sought by Blevins. Especially given Holcomb's promotion of Dumond, Blevins has not presented evidence sufficient to support a finding that Holcomb was more likely motivated by discriminatory animus than by the proffered reason. Because Blevins has not established the existence of a genuine issue of material fact as to pretext, the court will grant summary judgment on Blevins's disparate-treatment claim.[56]

---

55. Plaintiffs' brief at 15.

56. The court is troubled by the defendants' failure to clearly explain the change in financial circumstances that allowed Patterson to

## V. RETALIATION

Blevins also contends that she was denied the promotion to assistant credit manager and suffered harassment and hostility in retaliation for her husband's complaint about Holcomb to executives at Heilig–Meyers. The defendants contend that Blevins has not submitted evidence sufficient to prove a prima-facie case.

To prove a prima-facie case of retaliation, Blevins must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. *See Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir.1997) (citing *Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1074 (11th Cir.1995) (per curiam)). To recover for retaliation, the plaintiff must have had a reasonable, good-faith belief that the discrimination existed. *See Clover v. Total Sys. Servs.*, 157 F.3d 824, 827 (11th Cir. 1998). The objective reasonableness of the plaintiff's belief must be measured against existing substantive law. *See Id.* at 828 (citing *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 n. 2 (11th Cir.1998) (failure to charge the employee who opposes an employment practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry")). While the conduct opposed need not actually constitute sexual harassment, it must be close enough to support an objectively reasonable belief that it is. *See Id.*

The defendants claim that Blevins cannot show that she engaged in statutorily protected expression because she did not have had a reasonable, good-faith belief that the conduct she opposed violated Title VII. They also claim that she suffered no adverse employment action. The court finds that Blevins did not have an objectively reasonable belief that the conduct she opposed violated Title VII and accordingly will grant summary judgment for the defendants on Blevins's retaliation claim.

The defendants rely on the Eleventh Circuit's decision in *Clover* for their contention that Blevins did not have a reasonable belief that the conduct she opposed violated Title VII. *Clover* involved a plaintiff who participated in her employer's investigation of a sexual-harassment complaint brought by another employee against her supervisor. *See Id.* at 826–27. During the investigation, the plaintiff alleged that the supervisor called the employee on her personal beeper, made frequent visits to the employee's work area, knocked on the door to get the employee's attention but ducked behind the door if someone else looked up, hung up his phone on anybody who answered except the employee, and spoke with the employee in a flirtatious style. *See Id.* at 827. The Eleventh Circuit found that, in light of existing precedent, the plaintiff did not have an objectively reasonable belief that the behaviors she reported constituted sexual harassment. *See Id.* at 827–28. The court accordingly held that she did not have a claim for retaliation under Title VII's opposition clause. *See Id.* at 828–29.

Applying the holding of *Clover* to the case at hand, the court finds that Blevins could not have reasonably believed that Holcomb's conduct violated Title VII. Blevins and her husband complained of several episodes in which Holcomb used foul language in the office. There is no indication that Blevins or her husband complained that the behavior was targeted primarily at women. Moreover, as noted above, there is no evidence that Blevins could have reasonably believed that Holcomb's behavior was focused on women. However, even if Blevins had complained of sexist treatment and did have a reasonable basis for that complaint, she could not

---

approve Wilkes's promotion to assistant credit manager in mid–1996 after Patterson denied Blevins the same promotion in early 1996 due to a lack of financial resources for the position. However, because Blevins does not argue that this reason for denying Blevins a promotion in early 1996 was pretextual, the court does not address the issue.

have reasonably believed that Holcomb's behavior was severe enough to violate Title VII. To be actionable under Title VII, sexual harassment must be so "severe or pervasive" as to " 'alter the conditions of [the victim's] employment and create an abusive working environment.' " *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–2406, 91 L.Ed.2d 49 (1986)) (quoting *Henson,* 682 F.2d at 904). The environment must be "one that a reasonable person would find hostile or abusive." *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 370–371, 126 L.Ed.2d 295 (1993)). Courts determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* 524 U.S. 775, 118 S.Ct. at 2283 (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. at 371.) "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' " *Id.* 524 U.S. 775, 118 S.Ct. at 2283–84 (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, ——, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998)). The Supreme Court has "made it clear that conduct must be *extreme* to amount to a change in the terms and conditions of employment." *Id.* 524 U.S. 775, 118 S.Ct. at 2284 (emphasis added).

Judging Holcomb's conduct in light of this precedent, as *Clover* counsels, the court finds that Blevins could not have had an objectively reasonable belief that the conduct she and her husband opposed violated Title VII. Blevins and her husband complained that Holcomb: used a racially derogatory term to refer to an African–American employee; commented that Beck "had better get her fat ass over here" to perform her job duties; regularly swore in saying that he wanted the filing done; and, using foul language, told Beck, Amerspek, and possibly Blevins that if the employees did not complete the filing, one of them would end up on the unemployment line.[57]

■■■ These comments are not even close to being sufficiently severe and pervasive to alter the terms or conditions of employment. As a preliminary matter, the racially derogatory comment clearly was not sex-based, and so is irrelevant to the issue of whether Blevins, a white person, was sexually harassed. The other comments simply are not extreme enough to alter the conditions of employment for a reasonable person. The evidence presented by Blevins suggests that Holcomb was rude and vulgar but not physically threatening or humiliating to Blevins. In sum, his behavior amounts to nothing more than petulant expressions of anger about the completion of filing or other work assignments accompanied by foul language. This is not the type of behavior prohibited by Title VII: "Title VII is not a federal guarantee of refinement and sophistication in the workplace—... it prohibits only

---

**57.** In her brief, Blevins cites additional facts that she argues are evidence of sexual harassment. There is no evidence that she or her husband complained of these events. Moreover, the court does not consider them evidence of sexual harassment.

First, Blevins points to her deposition testimony that, in December 1996, Aaron Rodgers told her that Holcomb had said that he "would not have given [her] the promotion if [she] had gotten down on [her] knees and blew him." Blevins deposition at 188. Because Blevins did not learn about the state-

ment until after she had left her job, it is not relevant to her claim that she was subjected to a hostile work environment while at Heilig–Meyers.

Second, Blevins cites Holcomb's testimony about an argument he had with a male co-worker as evidence that Blevins experienced a hostile work environment. Plaintiffs' brief at 10. There is no evidence that this episode occurred during Blevins's tenure at the company or that she was aware of it prior to Holcomb's deposition.

harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir.1997). *See also Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1010 (7th Cir.1994) ("Workers, like other people, often are foul-mouthed . . ., and while there are still people in this country, male as well as female, who are deeply offended by dirty words, employers are not under a legal duty enforceable by suits under Title VII to purify the language of the workplace"). Moreover, although Blevins was present for some of the comments, few, if any, of the comments were directed at her. *Cf. Carr*, 32 F.3d at 1010 (finding conduct affected conditions of employment where verbal abuse targeted at plaintiff; noting that "it is a lot more uncomfortable to be the target of offensive words and conduct than to be merely an observer of them") (citing Patricia J. Williams, *The Alchemy of Race and Rights: Diary of a Law Professor* 129 (1991)). While conduct and behavior directed towards other employees are relevant to whether a plaintiff experienced a hostile work environment, the plaintiff must show that the conduct actually would have affected the terms and conditions of a reasonable person's employment. The behavior complained of by Blevins simply does not meet this standard. Because Blevins could not have reasonably believed that Holcomb's pattern of swearing violated Title VII, the court will grant summary judgment on Blevins's retaliation claims.[58] The court accordingly need not reach the issue of whether Blevins has established adverse employment action.

## VI. CONSTRUCTIVE DISCHARGE

■ Blevins also contends that she was constructively discharged as a result of the retaliatory treatment and discrimination she suffered. A plaintiff succeeds in establishing a constructive-discharge claim when the complained-of discriminatory conduct "was so intolerable that a reasonable person in [her] position would be compelled to resign." *Morgan v. Ford*, 6 F.3d 750, 755–56 (11th Cir.1993) (quoting *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989) (citations omitted)). *See also Hill v. Winn–Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir.1991). The defendants contend that a reasonable person would not have found the conditions that Blevins experienced intolerable and that Blevins did not give Heilig–Meyers sufficient time to correct the problem before resigning.

■ The court need not reach the defendants' arguments because Blevins has not shown that the allegedly intolerable conditions were motivated by discrimination or illegal retaliation. Title VII prohibits discrimination by employers against employees because of sex, and retaliation for the exercise of rights under the statute. Where, as here, the plaintiff has failed to prove that her employer's actions violated Title VII, she cannot prevail on a claim that those same actions caused her constructive discharge in violation of Title VII. *See Kriss v. Sprint Communications Co.*, 58 F.3d 1276, 1284 (8th Cir.1995) (holding that plaintiff's constructive-discharge claim was moot where the court had denied her underlying claim of discrimination); *Robertson v. Alabama Dept. of Economic and Community Affairs*, 902 F.Supp. 1473, 1480–1481 (M.D.Ala.1995) (DeMent J.) (granting summary judgment on plaintiff's constructive-discharge claim because she had failed to prove discrimination claim and therefore also failed to prove that discrimination made work conditions intolerable), *dismissed without opinion*, 89 F.3d 855 (11th Cir.1996). Because Blevins has failed to prove her claims of hostile work environment, disparate treatment, and retaliation, the court will grant summary judgment for the de-

---

**58.** The court additionally notes that Blevins's failure to demonstrate the existence of a genuine issue of material fact regarding whether the defendants' reasons for not promoting Blevins were pretextual provides an independent basis for granting summary judgment on Blevins's retaliatory failure-to-promote claim.

fendants on Blevins's constructive-discharge claim.

## VII.  STATE–LAW CLAIMS

■ Because the court will grant summary judgment as to all of Blevins's federal claims, the court declines to exercise supplemental jurisdiction as to Blevins's and Amerspek's state-law claims and accordingly will dismiss these claims, albeit without prejudice to the pursuit of the claims in state court. 28 U.S.C.A. § 1367(c)(3).[59] *See L.S.T., Inc. v. Crow,* 49 F.3d 679, 685 (11th Cir.1995) (per curiam) (reversing denial of summary judgment on federal claim and accordingly ordering the district court to consider on remand whether the continued exercise of its supplemental jurisdiction over state-law counts is appropriate).

## VIII.  CONCLUSION

For the reasons explained above, the court will grant summary judgment for the defendants on Blevins's federal claims and will dismiss Blevins's and Amerspek's state-law claims against the defendants without prejudice. An appropriate judgment will issue.

### *JUDGMENT*

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, AND DECREE of the court:

(1) That the motions for summary judgment filed by defendant Heilig–Meyers Corporation on October 5, 1998, and by defendant Monte Holcomb on October 9, 1998, are granted as to plaintiff Annette Marie Blevins's federal claims;

(2) That judgment is entered in favor of defendants Heilig–Meyers Corporation

and Monte Holcomb and against plaintiff Blevins on her federal claims, with plaintiff Blevins taking nothing on her federal claims; and

(3) That the state-law claims of plaintiffs Blevins and Frances Elizabeth Amerspek are dismissed without prejudice.

It is further ORDERED that costs are taxed against plaintiffs Blevins and Amerspek, for which execution may issue.

---

59. The dismissal without prejudice of the state-law claims should not work to the disadvantage of Blevins and Amerspek. Section 1367(d) provides for at least a 30-day tolling of any applicable statute of limitations so as to allow a plaintiff to refile her claims in state court. The section states:

"(d) The period of limitations for any claim asserted under subsection (a), and for any

other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."