Roger COLLIER, Plaintiff,

v.

CITY OF OPELIKA, Defendant.

Civil Action No. 3:03cv1197–T.

United States District Court,
M.D. Alabama,
Eastern Division.

Oct. 19, 2004.

E. Paul Jones, Alexander City, AL, for Plaintiff.

Randall C. Morgan, Hill Hill Carter Franco Cole & Black, Montgomery, AL, for Defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Roger Collier, an African-American firefighter for the Opelika Fire Department, filed this lawsuit against the defendant City of Opelika, Alabama under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981(a), 2000e through 2000e–17). Collier asserts a two-fold claim: that the city subjected him to a hostile work environment (1) because he is black and (2) so as to retaliate against him for participating in a prior discrimination suit against it. Jurisdiction is proper under 28 U.S.C.A. § 1331 (federal question) and 42 U.S.C.A. § 2000e–5(f)(3) (Title VII). The court currently considers the City of Opelika's motion for summary judgment. For the reasons discussed below, the motion will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, at the summary-judgment stage, this court assumes that the facts are as Collier alleges and makes all reasonable inferences in favor of him as the nonmoving party.

## II. FACTUAL BACKGROUND

To provide the unfamiliar reader with some context, the court will now describe with broad strokes the events that preceded the current litigation. Then, in a discussion that follows on the merits of Collier's claim, the court will delve more deeply into the facts that, according to him, evince a hostile work environment

based on race discrimination and retaliation.

Collier has been employed as an Opelika firefighter since May 1990. In 2001, he and other African–American Opelika firefighters sued the city in federal court and argued that previous promotions in the fire department were made on the basis of race in violation of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C.A. § 1983. Summary judgment was entered in favor of the city.[1]

On October 25, 2002, the City of Opelika announced an upcoming promotion to apparatus operator in the fire department. On November 14, the city promoted Ricky Holt, a white male, to that position. Collier and three white firefighters each filed grievances contesting Holt's promotion. On January 8, 2003, the Opelika City Council held a formal hearing to address Collier's grievance that he did not receive the apparatus-operator promotion because Opelika Assistant Fire Chief Robert Lee had intentionally miscalculated his performance-assessment score.

The city council contracted with the Auburn Technical Assistance Center to evaluate independently the validity and reliability of the city's firefighter-assessment instrument. One of the center's industrial psychologist re-scored redacted job-performance and training records for each of the complainants and concluded that, although there was no evidence of intentional discrimination or bias, Collier should have received credit for a fire science course that he had completed at a local community college.[2] Once the additional course was factored into Collier's record, his composite score was higher than Holt's. Based on the center's findings, the Opelika City Council vacated Holt's promotion and promoted Collier to the apparatus-operator position. The city council also awarded Collier back pay and seniority status dating back to November 14, 2002, the date he should have received the promotion.[3]

Lee continued, however, to take adverse actions against Collier. First, in 2003, Lee singled Collier out for surveillance by instructing other firefighters to watch him and to report any of his wrongdoing.[4] Second, later in 2003, Lee threatened Collier with his car when Lee's bumper nearly hit him.[5] In both instances, however, city officials counseled with both Collier and Lee, and, as a result, there were no further problems between the two.

### III. DISCUSSION

Collier now sues the city claiming that Assistant Fire Chief Lee subjected him to a hostile work environment because he is black and because he participated in a discrimination action against the city in 2001.[6]

▮ Under Title VII, it is unlawful for an employer "to discriminate against any individual ... or otherwise adversely affect his status as an employee, because of such individual's race." 42 U.S.C.A. § 2000e–2(a)(1) and (2). "To prove a pri-

---

1. Plaintiff's brief in response to the defendant's motion for summary judgment (Doc. No. 31), p. 8.

2. Defendant's brief in support of motion for summary judgment (Doc. No. 25), exhibit B, McLeod affidavit, p. 4.

3. *Id.*

4. *Id.*, exhibit A, Collier deposition, pp. 53–54.

5. *Id.*, pp. 64–65.

6. It was unclear from Collier's complaint in this case whether he was also challenging the City's failure to promote him. In a stipulation filed on September 23, 2004 (Doc. no. 34), he agreed that he was not making this challenge.

ma-facie case of hostile-work-environment harassment under Title VII, [Collier] must show that: (1)[ ]he is a member of a protected group; (2)[ ]he was subjected to unwelcome conduct; (3) the conduct was on the basis of race; (4) the conduct affected a term or condition of employment; and (5) imposition of liability on the defendant is appropriate." *Underwood v. Northport Health Servs., Inc.*, 57 F.Supp.2d 1289, 1301 (M.D.Ala.1999) (Thompson, J.). To establish a hostile-work-environment claim based on retaliation, Collier must show: (1) he participated in a protected activity; (2) the employer committed some adverse-employment action; (3) there is a causal link between the protected activity and the adverse action; (4) assuming that the adverse action is not an ultimate employment decision, there was a serious and material change in the terms, conditions or privileges of his employment; and (5) the imposition of liability on the defendant employer is appropriate. *Portera v. State Dep't of Fin.*, 322 F.Supp.2d 1285, 1291 n. 10 (M.D.Ala.2004) (Thompson, J.). Based on the evidence now before it, the court concludes that Collier has failed to establish that the city subjected him to either a racially or retaliatorily hostile work environment.

■ With regard to the fourth element in establishing either a racially or retaliatorily hostile work environment, the Supreme Court "ha[s] made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 2283–84, 141 L.Ed.2d 662 (1998). Conduct is not sufficiently hostile and pervasive, so as to alter the terms and conditions of employment, merely because a plaintiff-employee believes it to be so; instead, the work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787, 118 S.Ct. at 2283.

■ Factors that the court considers to determine whether Collier's work environment was sufficiently hostile to be actionable under Title VII include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Portera*, 322 F.Supp.2d at 1290 (quoting *Harris v. Forklift*, 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993)). No single factor in the court's analysis is dispositive; instead, whether a reasonable person would find Collier's work environment to be hostile depends on the totality of circumstances.

■ Collier points to two instances, recounted above, of Assistant Fire Chief Lee's conduct that were, according to him, so racially and retaliatorily offensive as to create a hostile work environment. First, he states that, in 2003, Lee singled him out for surveillance by instructing other firefighters to watch him and to report any of his wrongdoing.[7] Second, Collier states that, later in 2003, Lee threatened him with his car when Lee's bumper nearly hit him.[8]

Based on the totality of circumstances surrounding these alleged events, the court cannot conclude that a reasonable person would have perceived Collier's work environment to be racially or retaliatorily hostile. With regard to how frequently he worked under Lee's supervision

---

**7.** Defendant's brief in support of motion for summary judgment (Doc. No. 25), exhibit A, Collier deposition, pp. 53–54.

**8.** *Id.*, pp. 64–65.

in 2003, when the alleged harassment occurred, Collier testified during his deposition that he and Lee were on different shifts and, in fact, he "ha[d]n't worked for [Lee] in over five years."[9]  Also, during his deposition, Collier testified:

"Q.  [Assistant Chief Lee] doesn't give you any evaluations, does he?

"A.  No, sir.

"Q.  Your salary hasn't changed any, has it?

"A.  No, sir.

"Q.  Your shift hasn't changed ... has it?

"A.  No, sir.

"Q.  You haven't received any unfavorable assignments, have you, as a result of these two incidents with Chief Lee?

"A.  Not that I know of."[10]

This court also notes the city's corrective responses to Collier's complaints about the Assistant Fire Chief.  Collier first complained to the city about the Assistant Fire Chief in late 2002, alleging that he did not receive the apparatus-operator promotion because Lee had intentionally miscalculated his performance-assessment score.  In response to Collier's grievance, the city held a formal meeting and independently investigated his claims; although the city's independent evaluator found that there was no evidence of Lee's intentional misconduct or bias in his miscalculation of Collier's performance-assessment score, the city still took corrective measures and promoted Collier.  Second, in early 2003, when Collier learned from other firefighters that Lee had singled him out for surveillance, he filed another grievance with the City of Opelika.  After conducting a formal grievance hearing, the city informed Collier that it had taken disciplinary action against Lee.[11]  Later in 2003, when Lee threatened Collier with his car, Collier filed a verbal complaint with the human resources department.  Again, Collier met with Assistant Chief Lee, two other fire chiefs, and the mayor of Opelika.  Collier testified at his deposition that he has not experienced any problems from Lee since that meeting.[12]  The environment created by the city was therefore more curative and supportive rather than hostile.

It appears to the court that Collier's argument is not that the city turned a deaf ear to his repeated complaints; instead, he argues that he is "not totally satisfied ... because [Lee] didn't admit to doing what he d[id]" and that he "hadn't seen any disciplinary action that [had] been taken" against Lee.[13]  However, the fact that the city did not make its disciplinary action against Lee public does not necessarily mean that no action was taken.  Title VII does not require the sort of open and notorious vindication that Collier seeks.  *See Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548, 1555 (11th Cir.1997) ("Although [plaintiff] remains unsatisfied with [defendant's] resolution of her complaint, we have never stated—nor does [plaintiff] propose that we have ever held—that a complainant in a discrimination action has a right to the remedy of her choice.").  Furthermore, Collier's argument that he has not seen any evidence of the city's disciplinary action against Lee perplexes the court.  The most apparent evidence that, after Collier complained, the city took prompt and effective action to correct Lee's conduct is that, by Collier's own account, Lee has not harassed him since the most recent grievance meeting.

9.  *Id.,* 55, 67.

10.  *Id.,* pp. 67–68.

11.  *Id.,* p. 88.

12.  *Id.,* p. 64–65.

13.  *Id.*

 

To defeat a motion for summary judgment, there must be enough evidence from which the jury could reasonably find for the plaintiff. *Blevins v. Heilig–Meyers Corp.*, 52 F.Supp.2d 1337, 1344 (M.D.Ala. 1998) (Thompson, J.). Considering the evidence in its totality—Collier's deposition testimony and the city's reasonable efforts to correct promptly all of Lee's behavior about which Collier complained—the court concludes that Lee's conduct was not so hostile and unchecked as to alter the conditions of Collier's employment and create an abusive work environment. To the contrary, the evidence suggests that a reasonable person would find, as stated above, that work environment the city created for Collier was more curative and supportive than hostile and abusive.

Because the court concludes that Collier has failed to establish that the city subjected him to a hostile work environment, summary judgment will be entered in favor of the city.

An appropriate judgment will be entered.

### JUDGMENT

In accordance with the opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) Defendant City of Opelika's motion for summary judgment (Doc. No. 24) is granted.

(2) Judgment is entered in favor of defendant City of Opelika and against plaintiff Roger Collier, with plaintiff Collier taking nothing by his complaint.

It is further ORDERED that costs are taxed against plaintiff Collier, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.