**Karen PORTERA, Plaintiff,**

v.

**STATE OF ALABAMA DEPARTMENT OF FINANCE and John McClenney, Defendants.**

**Civil Action No. 2:03cv446–T.**

United States District Court,
M.D. Alabama,
Northern Division.

May 21, 2004.

Jimmy Douglas Jacobs, Montgomery, AL, for Plaintiff.

Jack M. Curtis, Mose Wadsworth Stuart, IV, William G. McKnight, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Karen Portera filed this lawsuit claiming that her employer, defendant State of Alabama Department of Finance, and her supervisor, defendant John McClenney, discriminated against her and subjected her to a hostile work environment because she is white; she also claims that she was retaliated against after complaining of discrimination. Portera brings this action under the First and Fourteenth Amendments to the United States Constitution (as enforced through 42 U.S.C.A. § 1983), and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981a, 2000e through 2000e–17). Jurisdiction is proper under 28 U.S.C.A. §§ 1331 (federal question), 1343 (civil rights), and 42 U.S.C.A. § 2000e–5(f)(3) (Title VII).

This case is now before the court on the defendants' motions for summary judgment. For the reasons that follow, the motions will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the nonmoving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993). In making a determination, the court must view all the evidence and any factual inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND AND DISCUSSION

Portera has been employed in the position of Security Systems Administrator for the Department of Finance since 1991. The facts surrounding each of her claims are discussed below in conjunction with the discussion of the claims on the merits.

As a preliminary matter, however, the court notes that, although Portera names both McClenney and the Finance Department as defendants, the Finance Department is the only proper defendant on the Title VII claim. *Cross v. Alabama Dept. of Mental Health and Mental Retardation,* 49 F.3d 1490, 1504 (11th Cir.1995). A suit against the Department of Finance may be commenced by naming either the supervisory employee as an agent of the employer (for example, McClenney) or by naming the employer directly. Either way, the effect is the same—individual-capacity suits are inappropriate under Title VII, and any Title VII claim Portera intended to assert against McClenney in his individual capacity is improper, and any claim against McClenney in his official capacity is redundant since the Finance Department is already a defendant. *Braden v. Piggly Wiggly,* 4 F.Supp.2d 1357 (M.D.Ala.1998) (Thompson, J.) (supervisors may not be sued in their individual capacity under Title VII); *Hearn v. Gen-*

*eral Elec. Co.*, 927 F.Supp. 1486, 1488, n. 1 (M.D.Ala.1996) (Thompson, J.) (where the company itself has been named as a defendant in a Title VII lawsuit, it is unnecessary to name a supervisor in his official capacity as well).

## A. *Title VII Disparate–Treatment Claims*

Portera began supervising Sylvia Adams, an African–American Security Systems Operator, at some point between 1997 and 1998, and continued to supervise her until October 2001. Portera's direct supervisor is Robert Stroud, and Stroud's supervisor is McClenney. Portera's disparate-treatment claims are based on two closely related events: McClenney's decision to remove Adams from Portera's supervision, and his decision to reassign some of Portera's job duties to Adams. Portera claims that these acts were taken because she is white.

### 1. Factual Background

In August 2001, according to Portera, McClenney ordered Adams to take over all Portera's duties, except for "billing." As Portera explained in her deposition, before the reassignment there was too much work for one individual, but not enough work to keep two people busy all of the time.[1] Therefore, after the reassignment, Portera was often left without enough work to do. Her pay and benefits did not change.

At about the same time as the job-duty reassignments, serious personal problems developed between Portera and Adams. The nature of these problems is not explained in the evidence or any of the parties' briefs, but their relationship deterio-

rated to the point where Portera and Adams would not speak to one another and would communicate through only email. As a result, McClenney ordered Adams to report directly to Stroud, and Portera no longer supervised any employees. Once again, Portera's job title and pay were not altered, nor was she formally disciplined.

On January 23, 2003, Portera filed a claim with the Equal Employment Opportunity Commission, often referred to as the EEOC.

### 2. Discussion

■ A Title VII charge of discrimination must be filed with the EEOC within 180 days of the discrete act that is the basis of the claims. 42 U.S.C.A. § 2000e–5(e)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002). Portera's Title VII disparate-treatment claims are time-barred because she did not file a timely complaint with the EEOC.

The earliest discrete act of which Portera complains is the reassignment of some of her job duties to Adams. According to Portera, this happened at some point in August 2001. Regardless of when in August this took place, the act is outside of the 180–day time period and is therefore time-barred.

Portera's claim that Adams was removed from her supervision is also time-barred. Adams was removed from Portera's supervision by October 19, 2001, at the latest.[2] Portera did not file an EEOC claim until 461 days after this event.[3]

---

1. Defendants' motion for summary judgment, filed January 22, 2004 (Doc. no. 16), exhibit A at 139–40 (Portera deposition).

2. On October 19, 2001, Portera signed a revised "Responsibilities/Results" form, which lists her job duties sans supervising Adams. Therefore, there is no doubt that, by October

19, 2001, she had been fully informed that she no longer supervised Adams. Defendants' motion for summary judgment, filed January 22, 2004 (Doc. no. 16), exhibit 12 (October 19, 2001 Responsibilities/Results form).

3. Portera originally filed a charge with the EEOC on January 23, 2002, and retained an

Portera alleges, however, that the "conduct continued and even intensified through the summer, fall and winter of 2002." [4] But, beyond this vague allegation, she has not identified any discrete acts which occurred during the time period the objectionable acts allegedly occurred.

Portera also appears to be contending that her disparate-treatment claims should be tolled because she first resorted to an internal grievance procedure, that is, the grievance process developed by the Department of Finance. [5] This is not a ground for tolling the filing period. *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980) ("the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods").

**B. *Title VII Hostile–Work–Environment and Harassment Claim***

Portera claims that the defendants violated Title VII by subjecting her to a hostile-work environment and harassment because of her race. Summary judgment is warranted on this claim.

**1. Factual Background**

Portera lists several events that she contends contributed to the creation of a hostile environment. First, she states that, in August 2002, McClenney yelled at her for not programming a key card the governor's office had requested. She admits that she was not formally disciplined for this, but states that programming the key card was Adams's responsibility and therefore she should not have been verbally reprimanded.

Portera also complains of two events involving office holiday parties. She contends that McClenney ordered her to attend a Thanksgiving luncheon in November 2002, even though he knew that she did not want to attend because she was intimidated by him. She adds that, in December 2002, Stroud was verbally reprimanded for allowing her to exchange personal gifts with him and other employees outside of the office Christmas party; that McClenney said that Stroud should not have allowed this because it was an example of "Karen [Portera] trying to run the department"; [6] and that McClenney threatened to remove her from Stroud's supervision and to supervise her directly, though this never occurred.

Finally, Portera contends that she was subjected to heightened surveillance when McClenney ordered a security camera to be positioned on her parking space. McClenney explains that the camera was positioned to observe some parking spaces next to Portera's parking space, where

attorney at that time. This filing would have been within the requisite 180–day time period. However, when she received a response from the EEOC stating that she "didn't have a case," Portera decided, after consulting with her attorney, not to pursue her charge, and she never filed a lawsuit in conjunction with the January 2002 claim. Defendants' motion for summary judgment, filed January 22, 2004 (Doc. no. 16), exhibit A at 110–15 (Portera deposition). Because she failed to file a lawsuit within 90 days of receiving a right-to-sue notice, her claims relating to this first EEOC charge cannot be heard by the court. *Green v. Union Foundry Co.* 281 F.3d 1229, 1233–34 (11th Cir.2002) (summary judgment against plaintiff was proper when, after defen-

dant contested the issue, plaintiff failed to meet his burden of showing that his lawsuit had been filed within 90 days of receipt of the right-to-sue letter).

4. Plaintiff's response to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 25), at 18.

5. *Id.*

6. Plaintiff's evidentiary submissions in support of her opposition to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 26), exhibit 15 at 48 (Stroud investigative statement).

there had been complaints of unauthorized vehicles parking. Portera has not presented evidence that McClenney's explanation is unworthy of credence or that he was supervising her more closely because of her race.

## 2. Discussion

■ Portera has failed to establish a prima-facie case of a hostile-work-environment or harassment violative of Title VII. "To prove a prima-facie case of hostile-work-environment harassment under Title VII, the plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to unwelcome conduct; (3) the conduct was on the basis of race; (4) the conduct affected a term or condition of employment; and (5) imposition of liability on the defendant is appropriate." *Underwood v. Northport Health Servs., Inc.*, 57 F.Supp.2d 1289, 1301 (M.D.Ala.1999) (Thompson, J.).

■ Race is certainly a protected category under Title VII, and it is not disputed that the conduct at issue was unwelcome. However, Portera has not produced evidence that McClenney's treatment of her was motivated by race, nor has she shown that the questioned conduct was severe enough to affect a term, condition, or privilege of employment.

While McClenney may have treated Portera poorly, Title VII does not create a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). McClenney's comments and actions were not, when considered separately, sufficiently severe to violate Title VII, nor do they appear to have been related to race at all, but rather were related to his perception of Portera's deficiencies as an employee. *Gonzalez v. Florida Dept. of Highway Safety and Motor Vehicles Div. of Fla. Highway Patrol*, 237 F.Supp.2d 1338, 1350 (S.D.Fla.2002) (Hoeveler, J.) (comments which did not appear to be related to a plaintiff's race do "not even come close to stating a claim" of racial harassment), *aff'd*, 45 Fed. Appx. 886 (11th Cir.2002) (table).

Furthermore, the acts about which Portera complains, even when considered together, were not severe enough to create an environment that affected a term or condition of employment. As the Supreme Court explained: "[I]n order to be actionable under the statute, a[n] ... objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 2283–84, 141 L.Ed.2d 662 (1998). Courts are "directed ... to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances.'" *Id.* (quoting *Harris v. Forklift*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993)). Factors that can be considered in determining whether a hostile environment was created include "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

While it is clear that, subjectively, Portera found McClenney's acts offensive, she has not demonstrated that the conduct was frequent or severe enough to create a hostile-work environment or constitute harassment. She complains of a total of four incidents over a six-month period, and one of these incidents (the Christmas party) involved reprimanding Stroud, Portera's direct supervisor, and not Portera herself.

Title VII does not protect an employee from harsh criticism from her employer.

McClenney's insistence that Portera follow the rules set by him and his verbal reprimands when she did not are not particularly severe. For example, Portera contends that McClenney's verbal reprimand, in August 2002, contributed to a hostile and abusive environment. Even if Portera is correct that she should not have been reprimanded for the "card key" incident, verbal discipline by a supervisor, completely devoid of any statements which could possibly by construed as racially offensive, is not the type of pervasive discriminatory conduct that Title VII is meant to prevent.

### C. *Title VII Retaliation Claims*

Portera claims that the defendants retaliated against her because she filed a grievance with the Finance Department's personnel director on October 5, 2001.[7] She further claims that she was retaliated against for continuing "to press her complaints to the Finance Department's legal staff in February of 2002 and to his [Lieutenant McClenney's] superior officer in July of 2002."[8] Portera does not allege that she was retaliated against for filing EEOC charges.

### 1. Factual Background

Portera's letter to the personnel director stated several complaints regarding her employment. The first part of the grievance is wholly unrelated to this case and addresses a written complaint against her filed by another employee, wholly unrelated to this case. The second part of her letter alleges that reassigning some of her job duties to Adams was racially discriminatory and that some of her duties had been given to male employees because of her sex.[9] Portera is not pursuing the sex-discrimination claim in this case.

### 2. Discussion

As previously noted, Portera filed her EEOC charge on January 23, 2003; therefore, the court will consider only discrete acts that occurred after July 27, 2002, or those acts deemed to be continuing violations that continued at least until July 27, 2002.[10]

The elements of the prima-facie case of retaliation are (1) protected activity, (2) adverse-employment action, and (3) a causal link between the protected activity and the adverse action. *Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir.2004).

There is no question that, in writing her memorandum to the personnel director, Portera was engaging in protected activity. Filing an internal grievance or voicing a concern to supervisors about racial discrimination, provided that expression is

---

7. Portera's original internal grievance was filed on September 20, 2001. Plaintiff's evidentiary submissions in support of her opposition to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 26), exhibit 18. She contends that the personnel director returned her grievance to her on September 28, 2001, and told her to go through her chain of command. On October 5, 2001, Portera resubmitted her grievance to the personnel director, stating that she had submitted the grievance to her direct supervisor and, also, that it was her belief that state policy permitted her to submit grievances directly to the personnel director if she did not wish to discuss her concerns with her direct supervisors. *Id.*, exhibit 19. Because Portera states that her grievance was not filed until October 2001, the court presumes that she is contending that she was retaliated against for resubmitting her September 20 memo.

8. Plaintiff's response to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 25), at 23.

9. Plaintiff's evidentiary submissions in support of her opposition to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 26), exhibit 18.

10. July 27, 2002 (and not July 22, 2002, as both parties contend), is 180 days before January 23, 2003. July 22, 2003, is 180 days *after* January 23, 2003.

not unreasonably disruptive or does not render the employee incapable of doing her job, is protected activity. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir.1997). The more difficult question is whether Portera has alleged that any non-time-barred adverse-employment actions were taken against her. Portera contends that the following acts were taken in retaliation for filing the grievance: (1) her job duties were restricted and she was not allowed to work on special assignments; (2) McClenney told her she would be fired if "he could find a way to do it";[11] (3) McClenney yelled at her in a manner which she perceived to be physically threatening; and (4) McClenney would not allow her to have contact with other departments within state government. First, the court will consider which of Portera's claims are not time-barred, and only then will consider whether she has shown she was subjected to an adverse-employment action, as is required to make out a prima-facie case of retaliation.

 Portera's claim that her job duties were restricted is time-barred; as previously stated, this claim arose in October 2001. And the other events Portera claims were retaliatory are not adverse-employment actions. If an employment action is not an ultimate employment decision (for example, loss of pay, firing, demotion), it must meet a certain threshold of substantiality such that the employment action is objectively serious and tangible enough to affect the employee's compensation, terms, conditions, or privileges of employment, *Stavropoulos v. Firestone*, 361 F.3d 610, 616–17 (11th Cir.2004). There is no "bright-line test for what kind of effect on the plaintiff's 'terms, conditions, or privileges' of employment the alleged discrimination must ·have for it to be actionable; not would such a rigid test be proper."

*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir.2001) (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir.2000)). However, "an employee must show a *serious and material change* in the terms, conditions, or privileges of employment." *Id.* at 1239.

 Portera contends that McClenney threatened to fire her; however, this action was never carried out. In *Stavropoulos*, the Eleventh Circuit Court of Appeals held that, because a board's decision to fire the plaintiff was never carried out, there was no adverse-employment action against the plaintiff. Similarly here, because McClenney's threat to fire Portera was never carried out, there was no adverse-employment action against her.

Portera's claim that she was physically threatened relates to the same incident where McClenney allegedly threatened to fire her. On August 13, 2002, in response to his perception that Portera had mishandled a request from the governor's office, McClenney verbally reprimanded her, raised his voice, and slammed his fist on his desk. While McClenney certainly addressed an employee in an unpleasant way, his conduct did not meet the threshold of substantiality required for an adverse-employment action. Slamming one's fist on a table once, unaccompanied by any physically threatening statements nor additional body language to suggest a physical threat, is merely an expression of one's anger; it is not a discrete adverse-employment action. Portera was understandably disturbed by McClenney's conduct, but her "subjective view of the significance and adversity of the employer's actions is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."

**11.** Plaintiff's evidentiary submissions in support of her opposition to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 26), exhibit 18.

*Davis,* 245 F.3d at 1239. As stated, a mere expression of anger by a supervisor is not a materially adverse-employment action.[12]

Portera's remaining retaliation claim is that she was not allowed to have contact with other departments within state government. She bases this claim on McClenney's statement, according to Stroud, that McClenney "did not want Ms. Portera to have contact with anyone in the new [governor's] administration," as well as McClenney's refusal to allow Portera to attend a briefing Sergeant Stroud gave to the governor's office regarding the security system.[13] Portera had traditionally accompanied Stroud on these assignments, but, on January 16, 2003, after stating he did not want Portera to have any contact with the new administration, McClenney ordered Stroud to take only Adams. Even if McClenney was retaliating against Portera because of her internal grievance, his action does not meet the requisite level of substantiality required to be an adverse-employment action. *Stavropoulos v. Firestone,* 361 F.3d 610, 616–17 (11th Cir.2004).

Finally, considering all of the above-stated allegations collectively, the court finds that Portera has not presented sufficient evidence to support her claims, nor has she identified an adverse-employment action taken against her. *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1457 (11th Cir.1998) ("[w]e need not and do not decide whether anything less than the totality of the alleged reprisals would be sufficient"

to satisfy "the adverse employment action requirement for a prima facie case of retaliation."). Because Portera has failed to establish a prima-facie case of retaliation, summary judgment will be entered on these claims.

### D. § 1983 Claims

Portera also claims that the defendants violated her "due process, equal protection, and first amendment" rights as enforced through § 1983.[14] Summary judgment will be granted on these claims.

#### 1. Due Process and First Amendment Claims

As stated, once the party seeking summary judgment has informed the court of the basis for the motion, the burden shifts to the nonmoving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993). Portera mentions her Due Process Clause and First Amendment claims in only one sentence in her complaint, and she has not expounded upon these claims since then; she has not submitted any evidence to support these claims. Because Portera has not met her burden, summary judgment will be granted on these claims.

#### 2. Equal–Protection Claims

In Alabama, there is a two-year statute of limitations for claims brought under the Equal Protection Clause of the Fourteenth

---

12. Portera may be attempting to claim that McClenney subjected her to retaliatory harassment that created a hostile environment, but she never articulates this. Furthermore, as previously explained, a one-time statement, that is not physically threatening, is simply not serious and tangible enough to affect the terms, conditions, or privileges of employment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 2283–84, 141 L.Ed.2d 662 (1998).

13. Plaintiff's evidentiary submissions in support of her opposition to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 26), exhibit 16 at 60 (Stroud deposition).

14. Complaint, filed April 24, 2003 (Doc. no. 1).

Amendment, as enforced through § 1983. *Lufkin v. McCallum,* 956 F.2d 1104 (11th Cir.1992) (noting that proper statute of limitations for § 1983 claim is the forum state's general statute of limitations for personal injury cases and that Alabama's statute of limitations is two years).[15] Therefore, some of Portera's claims that were time-barred under Title VII may be heard under § 1983. However, to the extent that Portera's equal-protection claims are identical to the Title VII claims which the court considered on the merits, these claims fail for the same reasons her Title VII claims fail. *Richardson v. Leeds Police Dept.,* 71 F.3d 801, 805 (11th Cir.1995) (in cases where § 1983 is employed as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same).

This lawsuit was filed on April 24, 2003. As previously stated, the earliest discrete act of which Portera complains is the reassignment of some of her job duties to Adams; according to Portera, this happened at some point in August 2001. Her second claim, that Adams was removed from her supervision, took place on October 19, 2001, at the latest. Both of these claims fall within the statute-of-limitations period. However, summary judgment must be granted on these claims for other reasons.

First, Portera's § 1983 claims against the Finance Department for all relief and against McClenney in his official capacity for damages are barred by the Eleventh Amendment. *Schopler v. Bliss,* 903 F.2d 1373, 1379 (11th Cir.1190) ("The Fourteenth Amendment does not by its own force override the States' Eleventh Amendment immunity, nor did Congress abrogate that immunity when it enacted 42 U.S.C. § 1983") (internal citations omitted). However, to the extent that Portera is suing McClenney in his official capacity for injunctive relief and in his individual capacity for damages, her § 1983 claims are not barred by the Eleventh Amendment and must be addressed on their merits. To do so, the framework traditionally applied to Title VII claims also applies to a claim for a § 1983 violation based on Equal Protection Clause. *Richardson,* 71 F.3d at 805. Therefore, the court will consider the two discrimination claims and the one retaliation claim that the court previously found time-barred under Title VII and did not address on the merits.

### a. Discrimination Claims

██ Portera contends that she was intentionally discriminated against because of her race when McClenney removed Adams from her supervision and when he assigned some of her job duties to Adams. The defendants contend that McClenney's actions did not violate the Constitution and that, even if his actions did, he would be entitled to qualified immunity.

The first action about which Portera complains is the removal of Adams from her supervision. Portera cannot establish a prima-facie case of intentional race discrimination on this claim. First, this removal of supervision is not an adverse-employment action because it is not "a *serious and material change* in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1238 (11th Cir.2001). Moreover, even if this is an adverse-employment action, to establish a prima-facie case

---

**15.** The Supreme Court recently held that the statute of limitations for a race-discrimination claim under 42 U.S.C.A. § 1981 is four years. *Jones v. R.R. Donnelley & Sons Co.,* —— U.S. ——, 124 S.Ct. 1836, —— L.Ed.2d —— (2004). Portera brings her equal-protection claim un-der § 1983. What effect, in any, *Jones* has on the statute of limitations for claims brought under the Equal Protection Clause as enforced through § 1983 is immaterial here because all of Portera's equal-protection claims are addressed on the merits.

of discrimination, Portera must also show (1) she is a member of a protected class, (2) she was qualified to supervise Adams, (3) the responsibility was taken away from her, and (4) someone outside of the protected class was given the responsibility. *See Hall v. Alabama Assoc. of Sch. Bds.*, 326 F.3d 1157, 1166 (11th Cir.2003). However, a white male was given the responsibility of supervising Adams when the duties were taken away from Portera. This fact, without other evidence that would suggest racial discrimination, negates any inference of racial discrimination as the motivation for the decision. Therefore, Portera has not established an inference of discrimination, which is necessary to establish a prima-facie case.

■ Moreover, even if Portera had established a prima-facie case of discrimination, the defendants have come forward with a legitimate and nondiscriminatory reason for their actions. Namely, Portera and Adams's relationship had deteriorated to such a point that they would communicate by only email. In a situation where a supervisor and her subordinate refuse to speak to one another, it would be reasonable to conclude that it was nearly impossible for the department to continue to function unless job duties were reassigned. Portera has not come forward with any evidence that suggests this was not the real reason for the reassignment.

■ Portera contends that, in August 2001, some of her job duties were reassigned to Adams. Specifically, McClenney ordered Adams to take over all of Portera's duties except for "billing." Portera contends that this was done because of her race, in violation of the Equal Protection Clause as enforced through § 1983. McClenney, however, responds that he is entitled to qualified immunity from this claim.

The qualified-immunity doctrine insulates a government employee from civil trials and other litigation burdens against him, in his individual capacity, stemming from actions taken pursuant to his discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The test for qualified immunity turns primarily on the objective reasonableness of the employee's conduct in light of established law: "governmental officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Where the law that the government employee allegedly violated was not clearly established at the time of the alleged offense, the employee is entitled to qualified immunity. *Id.* at 807, 102 S.Ct. at 2732. If the law was clearly established, however, the immunity defense will fail because "a reasonably competent public official should know the law governing his conduct." *Id.* at 818, 102 S.Ct. at 2738.

In determining whether a public employee is entitled to qualified immunity, an initial two-step analysis is followed. *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). First, the defendant must prove that he was acting within the scope of his 'discretionary authority' at the time of the allegedly illegal conduct. *Id.* Once this is proven, the burden shifts to the plaintiff to prove that the defendant's actions violated clearly established statutory or constitutional law. *Id.*

Here, it is evident that McClenney was acting within the scope of his discretionary authority when he redistributed some of Portera's job duties to Adams. Thus, the remaining issue under the qualified-immunity analysis is whether McClenney's action violated clearly established law.[16]

16. This inquiry into whether the defendant was acting within the scope of his discretion-

To determine whether McClenney's action violated clearly established law, the court must first address the threshold question of whether McClenney's acts were unconstitutional, and only then, if this first is answered in the affirmative, must the court then determine whether the unconstitutionality of the act was clearly established at the time the act took place. *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.").

As stated above, one of the required elements of a prima-facie case of intentional discrimination is that an adverse-employment action must have taken place. If an employment action is not an ultimate employment decision (for example, loss of pay, firing, demotion), it must meet a certain threshold of substantiality such that the employment action is objectively serious and tangible enough to affect the employee's compensation, terms, conditions, or privileges of employment, *Stavropoulos v. Firestone*, 361 F.3d 610, 616–17 (11th Cir.2004); otherwise, the action is not an adverse-employment action remediable by § 1983.

Whether an action reaches the requisite level of substantiality is a fact-specific inquiry. *Bass v. Board of County Comm'rs of Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir.2001). While not "all conduct by an employer negatively affecting an employee constitutes adverse employment action," there is no bright-line test or predefined benchmark regarding which

specific acts do constitute adverse-employment decisions. *Davis*, 245 F.3d .at 1238. Instead, as previously stated, to demonstrate discrimination, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* at 1239.

Construing the facts in the light most favorable to Portera, the court must conclude that an adverse-employment action was taken against Portera. Portera alleges that all of her job responsibilities, besides billing, were taken away from her and reassigned to Adams. After the reassignment, Portera contends, "[she] basically sat in her office all day with little or nothing to do";[17] thus, Portera argues, her job was essentially gutted. Removing all of an employee's duties, without formally firing or demoting her, would be "a *serious and material* change" in the terms or conditions of the employee's employment, *Davis*, 245 F.3d at 1239, for it would be essentially tantamount to such, or, at least, almost tantamount to such. A job without any of the duties that typically attend it, let alone without any duties at all, is not the same job.

Even though McClenney violated the Constitution, in order for Portera to prevail she must show that it was clearly established, at the time McClenney took action against her, that his action violated the Constitution. In order "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523

---

ary authority appears, more and more, to be a pro forma step. Nevertheless, because it is required by Eleventh Circuit law, this court must include it in its analysis.

17. Plaintiff's response to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 25), at 13.

(1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness must be apparent." *Id.* In determining the state of the law, this court must look to "the law originating in [the Eleventh] Circuit, as well as the Supreme Court, the courts of appeals, and the district courts." *Leeks v. Cunningham,* 997 F.2d 1330, 1333 (11th Cir.1993). Therefore, the right must be "clear, factually-defined, [and] well-recognized" at the time of the defendants' conduct. *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989). However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances.... Accordingly, ... the salient question that the [c]ourt ... ought to ... ask[ ] is whether the state of the law [at the time the constitutional violation took place] gave [the defendant] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Hope,* 536 U.S. at 741, 122 S.Ct. at 2516.

There can be no dispute that the equal-protection right to be free from purposeful, race-based employment discrimination was clearly established at the time of the event in question. *Burns v. Gadsden State Community College,* 908 F.2d 1512, 1517–1518 (11th Cir.1990) (per curiam); *see also Smith v. Lomax,* 45 F.3d 402, 407 (11th Cir.1995); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1064 (11th Cir. 1992); *Busby v. City of Orlando,* 931 F.2d 764, 775–76 (11th Cir.1991); *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1478–79 (11th Cir.1991). The cases cover a wide range of employment decisions, including discharge, failure to hire, failure to promote, transfer, and demotion, and make it clear that intentional racial discrimination is prohibited in the workplace. This has been a long-established rule of which employers should be well aware.

However, it was not clear, at the time McClenney reassigned Portera's job duties, that his action constituted an adverse-employment action that could constitute a violation of the Equal Protection Clause. According to the Eleventh Circuit Court of Appeals, a government official is entitled to qualified immunity if it was unclear, at the time the act took place, that the specific act taken constitutes an adverse-employment action.

In *Williams v. Consolidated City of Jacksonville,* 341 F.3d 1261 (11th Cir. 2003), while finding that a fire chief did intentionally discriminate on the basis of race when he decided not to create four new positions in the fire department in order to avoid promoting four white individuals, the Eleventh Circuit Court of Appeals granted him qualified immunity. The court noted that, while "it was clearly established in 1999 that it was unlawful for a public official to make a race-or gender-based decision concerning hiring, termination, promotion, or transfer to or from an existing position, ... to refuse to fill an existing position because of the race of an applicant, or to reorganize existing positions to avoid promoting an employee because of her gender," it was not clearly established "that it was unconstitutional to make a decision not to *create* four new high-level positions as proposed by a subordinate official based solely upon the race or gender of the next eligible candidates." *Id.* at 1272.

*Williams* stands for the proposition, at least as far as the Eleventh Circuit is concerned, that in order for a government employee to be held liable in his individual capacity, it must be clearly established that the government employee's action was an adverse-employment action at the time the act was undertaken. The defendant in *Williams* would not have received qualified immunity if this were not the rule: there was no dispute that the defendant intend-

ed to discriminate—the only contested issue was whether his act was the *type of adverse-employment action* that employees are protected against under the Equal Protection Clause. Therefore, this court must determine if McClenney was put on fair notice that deciding to reassign job duties on the basis of race could violate the Equal Protection Clause.

At the time of the reassignment, the most recent relevant case in this circuit, *Davis v. Town of Lake Park, Fla.,* noted: "We do not suggest that a change in work assignments can never by itself give rise to a Title VII claim; in unusual instances the change may be so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment." 245 F.3d 1232, 1245 (11th Cir.2001) (quoting *McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068 (11th Cir.1996)). Nevertheless, the Eleventh Circuit has instructed that lower courts should view work-reassignment discrimination claims with a jaundiced eye. The court cautioned that, "applying the adverse action requirement carefully is especially important when the plaintiff's claim is predicated on his disagreement with his employer's reassignment of job tasks." *Id.* at 1244. The court based this caution on the observation that, "[w]ork assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.*

In *McNely v. Ocala Star–Banner Corp.,* which the *Davis* court put up as an example of an exception to the general rule that work reassignments do not constitute adverse-employment actions, the plaintiff alleged that he had been relieved of his supervisory duties, assigned to clean toilets as a janitor, and later reassigned to the shipping department where he was expected to perform physical tasks difficult or impossible for him to complete. *Davis,* 245 F.3d at 1245. This is the example the *Davis* court gave of an "unusual instance" where reassignment could constitute an adverse-employment action. "In the vast majority of instances, however, ... an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause." *Id.*

Portera's circumstances (on the one hand, she "basically sat in her office all day with little or nothing to do," [18] and, on the hand, she still enjoyed full salary and benefits with no change in job title and thus suffered no tangible job loss) fall somewhere in between the "unusual" circumstance of being removed from a managerial position and told to scrub toilets, as discussed in *McNely,* and the "loss of prestige" addressed in *Davis.*

Although, "under *Hope,* the exact unlawful action at issue need not have been resolved by previous case law," *Williams,* 341 F.3d at 1272 (quoting *Hope v. Pelzer,* 536 U.S. at 739, 122 S.Ct. 2508, 153 L.Ed.2d 666), it appears that, in light of *Davis's* singling out of job reassignments in particular as rarely constituting adverse-employment actions, enough confusion existed in the circuit case law, regarding whether a reassignment of most, but not all, of an employee's job duties could constitute a violation of the Equal Protection Clause, to warrant application of qualified immunity here. [19]

---

18. Plaintiff's response to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 25), at 13.

19. Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment," 42 U.S.C.A. § 2000e–2(a), and "[c]ourts have uniformly read this language to require a plaintiff suing under § 2000e–2(a) to establish, as part of his prima facie case, that he

Therefore, although this case presents a very close call under circuit law (which itself is a significant indication that qualified immunity applies), the court finds that McClenney is entitled to qualified immunity on Portera's equal-protection claim because it was not clear, at the time McClenney made the reassignment, that such an act, even if motived by discriminatory intent, could constitute a violation of Equal Protection Clause as enforced through § 1983.[20]

### b. Retaliation Claim

■ Portera claims that the defendants retaliated against her because she filed a grievance with the personnel director on October 5, 2001. She alleges that the following acts were done to retaliate against her: (1) her job duties were restricted and she was not allowed to work on special assignments; (2) she was not allowed to have contact with other departments within state government; (3) she was yelled at in a manner which she perceived physically threatening; and (4) she was told McClenney would fire her "if he could find a way to do it." [21] Because the court has already found that summary judgment is appropri-

ate on the merits on the last three claims for Title VII purposes, the court now finds, for the same reasons, that summary judgment is appropriate on these claims for § 1983 purposes. However, because Portera's first claim, that her job duties were restricted and she was not allowed to work on special assignments, was not addressed on the merits for Title VII purposes and because it is not time-barred under § 1983, the court will address it now.

A reasonable factfinder could not conclude that Portera's job duties were restricted in retaliation for filing her grievance. Portera's job duties began to be substantially restricted in August 2001, but she did not file a grievance until October 2001. There could be no causal relationship between Portera's protected activity and the claimed adverse-employment action because the protected activity did not take place until after the alleged adverse-employment action. Although Portera contends that this is a continuing violation, in that her responsibilities continued to be restricted, it is clear that the primary impetus for this decision was not her grievance. A factfinder could not reasonably

---

suffered so-called 'adverse employment action.' " *Davis*, 245 F.3d at 1238. While, as stated previously, the Eleventh Circuit has made clear that the framework traditionally applied to Title VII claims also applies to a claim for a § 1983 violation based on Equal Protection Clause, *Richardson*, 71 F.3d at 805, the appellate court has not specifically addressed whether, because neither § 1983 nor the Equal Protection Clause contains the above Title VII language or similar language, the adverse-employment-action requirement applies to claims based on § 1983 and the Equal Protection Clause. This court need not address whether this arguable uncertainty warrants application of the qualified-immunity defense; although the uncertainty itself does support the argument that the defense should apply.

**20.** The court must candidly admit that, at first blush, it would have found that McClenney

was not entitled to qualified immunity. The court believes that everyone should know by now that, outside the narrow area of "affirmative action," any and all intentionally racially discriminatory decisions, of whatever kind, effecting a serious and material change in the conditions of employment violate the Equal Protection Clause. But with the detailed parsing that *Williams* and *Davis* have done to the notion of adverse-employment action and with *Davis's* indication of a strong reluctance to view job reassignments as an adverse-employment action, the court is now convinced that McClenney is entitled to qualified immunity. *See also supra* note 19.

**21.** Plaintiff's evidentiary submissions in support of her opposition to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 26), exhibit 18.

conclude that her job duties were restricted in retaliation for filing an internal grievance. Moreover, those restrictions on her job duties that followed the filing of her grievance were not substantial enough to constitute an adverse-employment action.

## III. CONCLUSION

For the reasons stated, summary judgment is due to be granted in favor of the defendants on all claims. An appropriate judgment will be entered.

## JUDGMENT

In accordance with the opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The motions for summary judgment filed by defendants State of Alabama Department of Finance and John McClenney, on January 22 and February 11, 2004 (Doc. nos. 16 & 21), are granted.

(2) Judgment is entered in favor of defendants State of Alabama Department of Finance and McClenney and against plaintiff Karen Portera, with plaintiff Portera taking nothing by her complaint.

It is further ordered that costs are taxed against plaintiff Portera, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.